IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2008 JAN 23 PM 1:59
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| ADVOCACY, INCORPORATED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. A08CA071 LY |
| | § | |
| ADELAIDE HORN, in her official capacity | § | |
| as the Commissioner of the Texas Department | § | |
| of Aging and Disability Services, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Advocacy, Incorporated complains of the Department of Aging and Disability Services, and Adelaide Horn, in her official capacity as the Commissioner of Department of Aging and Disability Services.

### I. PRELIMINARY STATEMENT

1. Advocacy, Incorporated ("Advocacy"), is the designated protection and advocacy system for the state of Texas. Under federal law, Advocacy's mandate is to protect and advocate on behalf of individuals with mental or physical disabilities and to investigate incidents of abuse or neglect. *See* the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act ("PADD"), 42 U.S.C. §§ 15001, *et seq.*; and the Protection and Advocacy for Individual Rights Act ("PAIR"), 29 U.S.C. § 794e(a). (These three laws are hereafter collectively referred to as the "P&A Acts.").

1

2. In accordance with these federal mandates Advocacy has the authority to access a report prepared or received by staff at a state school or an investigation report prepared by staff of a state school that describes incidents of abuse, neglect, or death and the steps taken to investigate such incidents, for the purposes of investigating incidents of abuse or neglect at state schools. Consistent with Advocacy's federal mandates, Advocacy has requested access to Defendant's death review reports, internal investigations, and/or peer review reports related to incidents involving the death of two individuals with disabilities who reside in the Defendant's state schools; however, the Defendant has refused to provide Advocacy access to these documents alleging that they are confidential.

3. Accordingly, Plaintiff seeks declaratory and injunctive relief in order to prevent Defendant from failing to provide Advocacy with prompt access to documents related to death review reports, internal investigations, and/or peer review reports authorized by the PADD Act and the PAIMI Act and to prohibit Defendant from implementing a policy that denies access to such documents.

## II. JURISDICTION

4. This action is authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights guaranteed by the P&A Acts, 42 U.S.C. § 10801, *et seq.*, 42 U.S.C. §§ 15001, *et seq.*, 29 U.S.C. § 794e(a), and 28 U.S.C. §§ 2201-02. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

5. This Court has authority to grant Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendants reside in this district, and the events and omissions complained of occurred in this district.

### III. PARTIES

7. Plaintiff ADVOCACY, INCORPORATED ("Advocacy") is a nonprofit Texas corporation authorized by Congressional mandate to protect and advocate for the civil rights of persons with disabilities. Advocacy was and is designated by the State of Texas to perform the above-referenced Congressional mandate pursuant to the PADD Act, 42 U.S.C. §§ 15001-03, and the PAIMI Act, 42 U.S.C. §§ 10802-03. Advocacy spends considerable time and resources investigating incidents of abuse and neglect in facilities, including state school facilities.

8. Defendant, ADELAIDE HORN, is the Commissioner of the Texas Department of Aging and Disability Services (hereinafter "DADS" or "Department"). The Department provides services, care and treatment to individuals with disabilities in Texas. Defendant Horn is responsible for the policies of the Department and for the administration, operation and control of the functions, programs and affairs of Texas state schools for persons with mental retardation. Commissioner Horn's duties also include ensuring that the Department and its policies are in compliance with federal laws and regulations including the PADD Act, the PAIMI Act and their implementing regulations. She is being sued in her official capacity as the Commissioner of the Department of Aging and Disability Services. She may be served in her official capacity at 701 W. 51st St., Austin, Texas 78751.

9. Whenever Plaintiff uses the word "Defendant", it means Defendant, its agents, employees, successors and all persons acting in concert with her at her direction.

## IV. FACTS

10. Congress enacted the P&A Acts after extensive congressional investigations found that existing state systems for monitoring compliance with respect to the abuse and neglect of persons with disabilities residing in institutions vary widely and are frequently inadequate to protect these individuals. In order to ensure that the fox was no longer guarding the hen house, Congress mandated that each state have a 'protection and advocacy system' designed to have independent access to institutions and records in order to detect and prevent abuse and neglect. Because the State of Texas receives federal funds under the P&A Acts, it is required to designate a system that is designed to both protect and advocate the rights of individuals with disabilities, and that also investigates incidents of abuse and neglect of individuals with disabilities. *See, e.g.*, 42 U.S.C. § 10801, *et seq.;* 42 U.S.C. § 15001, *et seq.* Advocacy has been designated by the State of Texas to be that system.

11. When investigating incidents of abuse and neglect, the P&A Acts mandate that Advocacy have access to "a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities; a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents." 42 U.S.C. § 15043(c). Defendant, however, is refusing to provide Advocacy with the Department's internal investigation reports. These reports are necessary for Advocacy to perform its congressionally mandated protection and advocacy role. In sum, Advocacy has a statutory right to such documents.

12. R.G, a fifteen year old boy was a ward of the state and committed to the Mexia SS, ("Mexia SS"), a facility operated by DADS. Upon information and belief, on or about

4

January 15, 2007, R.G., was restrained in a face down position for several minutes and then transferred to a restraint board where, again, he lay in a face down position for fifteen additional minutes. He was released from the papoose board only after staff determined that he was unresponsive. He was subsequently pronounced dead at the emergency room. The autopsy report states he died due to positional asphyxiation from restraint. He was only a resident of Mexia SS for a brief six months. However, during that time he was restrained approximately 60 times.

13. After obtaining knowledge of R.G.'s death, Advocacy initiated an investigation into his death to determine whether or not R.G.'s death resulted from staff abuse and/or neglect at Mexia SS. Based on information and belief, a death review report, internal investigation, and/or peer review report has been completed regarding R.G.'s death by Mexia SS pursuant to DADS policy.

14. On April 5, 2007, Advocacy requested in writing that the Superintendent of Mexia SS provide Advocacy with all records and information related to R.G. during his commitment to the Mexia SS, including all internal investigations, peer review and/or quality assurance records related to R.G.'s death. These documents are essential for Advocacy's statutorily authorized investigation into the facts surrounding R.G.'s death.

15. Although the Superintendent of Mexia SS did provide documents related to R.G.'s care and treatment while committed at the Mexia SS, he did not provide Advocacy with internal investigation reports, peer review reports, and/or quality assurance reports related to R.G.'s death.

16. As a result of the denial of this investigation report document, Advocacy is unable to complete its statutorily authorized investigation into the incident which caused R.G.'s death.

Further, Advocacy is unable to determine if Mexia SS, and/or Defendant have required Mexia SS and its employees to take corrective measures in response to this incident so that current Mexia SS residents are appropriately protected from the use of the same or similar restraint procedures.

17. A.P. was a resident in custody, care, and control of Corpus Christi State School ("Corpus Christi SS"), a facility operated by DADS. Upon information and belief, on or about May 30, 2007, A.P. committed suicide by hanging herself with her shoelaces in her bedroom at Corpus Christi SS. There is indication that when Corpus Christi SS staff first found her she was still alive, but due to the Staff's failure to implement emergency procedures, A.P.'s death was not averted.

18. After obtaining knowledge of A.P.'s death, Advocacy initiated an investigation into her death to determine whether or not her death was a result of abuse and/or neglect by Corpus Christi SS staff. Based on information and belief, DADS death review report, internal investigation, and/or peer review report has been completed regarding A.P.'s death by Corpus Christi SS pursuant to DADS policy.

19. On July 10, 2007, Advocacy sent a written request seeking all investigative reports into the death of A.P. to the Superintendent of Corpus Christi SS. These documents are essential for Advocacy's statutorily authorized investigation into the facts surrounding A.P.'s death.

20. The Superintendent of Corpus Christi SS did not provide Advocacy with death review reports, internal investigations, and/or peer review reports related to A.P.'s death.

21. As a result of the denial of these investigation report documents, Advocacy is unable to complete its statutorily authorized investigation into the incident which caused A.P.'s death, and Advocacy is unable to determine if Corpus Christi SS and/or Defendant have required

Corpus Christi SS and its employees to take corrective measures in response to this incident in order to protect its residents.

22. On August 8, 2007, Advocacy made a written request to Defendant's in-house attorney, Kent Johnson, for any peer review reports related to R.G. and A.P.'s deaths. This written request also sought clarification and confirmation regarding the Defendant's policy, practice, or procedure regarding releasing peer review materials to Advocacy.

23. Although Advocacy had provided the Department with Advocacy's statutory authority as well as case law that supported its proposition, on August 30, 2007, Mr. Johnson, after consultation with DADS, indicated that it is the Department's position that it will not release any peer review documents to Advocacy, including the documents relating to R.G. and A.P.'s deaths.

24. The Defendant's Policy unduly restricts Advocacy from obtaining information and documents it is entitled to receive under federal law, and the policy impairs, limits and impedes Advocacy's ability to conduct statutorily authorized investigations.

25. Despite numerous oral and written requests by Advocacy, the Defendant, who implements Department policy, refuses to provide Advocacy access to death review reports, peer review materials, and other internal investigations. Moreover, Defendant's policy regarding these incident reports unduly limits, impairs, and impedes Advocacy's ability to conduct statutorily authorized investigations regarding abuse and/or neglect allegations involving individuals with disabilities receiving care and/or treatment at the Department facilities.

V. **CAUSE OF ACTION—VIOLATION OF THE PADD AND PAIMI ACTS**

26. Plaintiff Advocacy restates each and every allegation contained in Paragraphs 1 through 25 as though fully set forth herein.

27. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges or immunities secured under the U.S. Constitution or Federal law.

28. The PADD and PAIMI Act authorizes Plaintiff Advocacy to conduct abuse and neglect investigations and to otherwise perform its statutory mandate to protect individuals with developmental disabilities and mental illness from abuse and neglect.

29. In order to perform its advocacy and investigatory role, the PADD and PAIMI Acts provide Advocacy with the right to access confidential records and reports of individuals with disabilities. 42 U.S.C. § 15043(a)(2); 42 U.S.C. § 10805(a)(1).

30. The federal statute that creates these rights explicitly requires that they supersede any state law or policy prohibiting such access. 42 U.S.C. § 10806 (b)(2)(C).

31. Advocacy learned of the deaths of two residents who were committed to facilities operated by the Department. Advocacy requested copies of internal investigation reports and death review reports, in order to investigate these deaths pursuant to the PADD and PAIMI Acts.

32. The Acts specify that Advocacy is authorized to have access to a report prepared or received by staff at a state school or an investigation report prepared by staff of a state school that describes incidents of abuse, neglect, or death and the steps taken to investigate such incidents, for the purposes of investigating incidents of abuse or neglect at state schools. 42 U.S.C. § 15043(c); 42 U.S.C. § 10806(b)(3)(A).

33. The records requested by Advocacy fall within the broad description of records and without these records Advocacy will be unable to complete a thorough investigation into the deaths of these individuals.

34. Defendants failed to make the death review reports, internal investigations, and/or peer review reports pertaining to the deaths of R.G. and A.P. available to Advocacy. Defendant's refusal to give Advocacy access to the requested records violates the PADD and PAIMI Acts by failing to provide timely access to the records of persons who have died at facilities operated by the Department, and preventing Advocacy from investigating resident deaths.

35. Additionally, Defendants, through their legal counsel at the Department, have asserted that they will continue to maintain a policy of not releasing death review reports, internal investigations, and/or peer review reports related documents of persons who die at facilities operated by the Department.

36. The policy and actions of the Defendants, acting under color of law, violate the right of Plaintiff to meaningful and timely access to the death review reports, internal investigations, and/or peer review materials of R.G. and A.P., in violation of the PADD and PAIMI Acts, and Defendant's policy and actions, unless enjoined, will violate Advocacy's right to that information in the event of future deaths at facilities operated by the Department.

## VI. INJUNCTIVE RELIEF

37. Plaintiff Advocacy requests that after notice and hearing, the Court enjoin Defendant from denying Advocacy immediate access to death review reports, internal investigations, and/or peer review materials of individuals who have died at facilities operated by Defendant.

## VII. DECLARATORY RELIEF

38. Plaintiff Advocacy requests that after notice and hearing, this Court enter a declaratory judgment that the Defendant's policies, regulations, and practices of denying

Advocacy access to death review reports, internal investigations, and/or peer review materials of individuals who have died at the Department's state schools, violate the PADD and PAIMI Acts. 42 U.S.C. § 105043 *et seq.* and 42 U.S.C. § 10801 *et seq.*

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(A) Enter a preliminary injunction enjoining the Defendant, its agents or employees from denying Advocacy immediate access to any death review reports, peer review reports and/or other internal investigational materials pertaining to R.G. and A.P., so that Plaintiff Advocacy may review and copy the same.

(B) Issue a permanent injunction against Defendant and her successors to prevent Defendant and her successors from engaging in the conduct complained of herein regarding all future records requests by Plaintiff Advocacy for production of death review reports, peer review reports and/or other investigational materials of individuals who die at facilities operated by the Department.

(C) Grant a declaratory judgment to Plaintiff declaring that the Department Policy of refusing to provide Advocacy with death review reports, peer review reports and/or other investigational materials of individuals who die at facilities operated by the Department violates the PAIMI Act and the PADD Acts.

(D) Award reasonable attorney fees to Plaintiff Advocacy and costs pursuant to 42 U.S.C. § 1988.

(E) Award Plaintiff any other relief that the Court deems just and equitable.

Respectfully submitted,

_____
BETH MITCHELL
State Bar No. 00784613

ADVOCACY, INCORPORATED
7800 Shoal Creek Boulevard, Suite 171-E
Austin, Texas 78757-1024
(512) 454-4816 (Phone)
(512) 323-0902 (Fax)
Email: bmitchell@advocacyinc.org

ATTORNEY FOR PLAINTIFF

# VERIFICATION

THE STATE OF TEXAS § 

COUNTY OF TRAVIS §

BEFORE ME, the undersigned authority, on this day personally appeared Mary Faithful, who, known to me, after being by me duly sworn, an oath stated:

"I am the Executive Director for Advocacy Incorporated, the Plaintiff in this action; I have read the forgoing Verified Complaint, and am familiar with the contents which are true and correct to the best of my information and belief."

_____
Mary Faithfull

SUBSCRIBED AND SWORN TO BEFORE ME on the 22 day of January, 2008, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

KETRISKA PHILLIPS
Notary Public, State of Texas
My Commission Expires
August 24, 2008