FILED
2009 MAR 26 PM 3: 45
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ K _____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ADVOCACY, INCORPORATED, § | | |
| PLAINTIFF, § | | |
| § | | |
| V. § | | |
| § | CIVIL NO. A-08-CA-071-LY | |
| ADELAIDE HORN, IN HER OFFICIAL § | | |
| CAPACITY AS THE COMMISSIONER § | | |
| OF THE TEXAS DEPARTMENT OF § | | |
| AGING & DISABILITY SERVICES, § | | |
| DEFENDANT. § | | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 29, 2008, the Court called the above-styled case for trial to the bench. Plaintiff Advocacy, Incorporated appeared by counsel. Defendant Adelaide Horn appeared by counsel. Also before the Court are Plaintiff's Request for Judgment filed June 12, 2008 (Doc. #16), which the Court dismissed but construes as part of the merits briefing; Defendant Adelaide Horn's Brief-in-Chief filed July 18, 2008 (Doc. #26); and Plaintiff's Reply Brief filed August 4, 2008 (Doc. #34). Having carefully considered the trial record, the briefing of the parties, the arguments of counsel, and the applicable law, the Court finds that the plain language of the Protection and Advocacy for Persons with Developmental Disabilities Act ("PADD")[1] authorizes Plaintiff to access peer-review and death-review reports for purposes of investigating the death of an individual with a disability. In so deciding, the Court makes the following findings of fact and conclusions of law, awarding judgment in favor of Plaintiff and enjoining Defendant from continuing to deny Plaintiff access to

---

[1] 42 U.S.C. §§ 15041-15045 (2005).

peer-review and death-review reports regarding residents who die at Texas Department of Aging and Disabilities Services' facilities.[2]

## I. Jurisdiction

This Court has jurisdiction, as the claims arise under the laws of the United States. *See* 28 U.S.C. § 1331 (2006). The Court has authority to grant Plaintiff's claims for declaratory and injunction relief under federal law. *See* 28 U.S.C. §§ 2201-2202 (2006); FED. R. CIV. P. 57. Venue is proper in the United States District Court for the Western District of Texas, Austin Division, because Defendant resides in the district and all events and omissions complained of occurred in the district. *See* 28 U.S.C. §§ 1391(b) (2006).

## II. Background and Procedural History

The Texas Department of Aging and Disabilities Services ("DADS"), of whom Defendant Adelaide Horn is the Commissioner, operates residential facilities that provide services to mentally retarded and developmentally disabled persons in Texas. Plaintiff Advocacy, Incorporated ("Advocacy") has been designated by the State of Texas as the oversight agency authorized to advocate and investigate on behalf of residents of DADS facilities pursuant to federal protection and advocacy laws, including the PADD Act, the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI")[3], and the Protection and Advocacy of Individuals' Rights Program of the

---

[2] Throughout this opinion, all findings of fact that are more appropriately considered conclusions of law are so deemed. Likewise, any conclusion of law that is more appropriately considered a finding of fact is so deemed.

[3] 42 U.S.C. §§ 10801-10851 (2005).

Rehabilitation Act ("PAIR")[4]. These statutes authorize Advocacy access to certain records in furtherance of their investigations.

Advocacy sought access to records relating to R.G. and A.P., two residents of DADS facilities, who died while under the State's care. Defendant declined Advocacy access to the documents created by its peer-review committees, including its death-review reports, on the ground that Advocacy was not entitled to such documents under the federal protection and advocacy laws. After exhausting all administrative procedures to obtain these documents, Advocacy filed suit in this Court seeking declaratory and injunctive relief to maintain its authority under the protection and advocacy laws to access peer-review and death-review reports to further their investigations into potential abuse and neglect of residents at DADS facilities.

### III. Discussion and Analysis

Congress enacted the PADD, PAIMI and PAIR Acts (also known as the "P&A laws") to protect the human and civil rights of individuals with mental and developmental disabilities institutionalized in state facilities. The PADD Act, which was originally enacted in 1975 but repealed and replaced in its entirety in 2000, established the Protection and Advocacy System to provide protections for persons with developmental disabilities. *See* 42 U.S.C. § 15041. The PAIMI Act was modeled after the PADD Act to provide parallel protections for persons with mental disabilities. *See* 42 U.S.C. § 10803. The PAIR Act further extended the protection and advocacy mandate to protect the rights of individuals with disabilities who are ineligible for services under the PADD and PAIMI Acts. *See* 29 U.S.C. § 794e(f).

---

[4] 29 U.S.C. § 794e (2008).

The P&A laws provide state-designated agencies such as Advocacy with broad investigatory authority, including access to records. *See* 42 U.S.C. § 15043(a)(2) (PADD Act); 42 U.S.C. §§ 10805(a), 10806(3)(A) (PAIMI Act); 29 U.S.C. § 794e(f)(2) (2008) (PAIR Act). Advocacy sought access to the death-review reports prepared by DADS staff regarding the death of two of its residents, R.G. and A.P., which Defendant refused to provide. Advocacy argues that these reports fall within the definition of "record" in the PADD Act, which explicitly includes a report investigating an incident resulting in the death of an individual with a disability. *See* 42 U.S.C. § 15043(c)(2).

The PADD Act specifically authorizes agencies, such as Advocacy, to have "access to *all records* of . . . any individual with a developmental disability, in a situation in which the individual, by reasons of such individual's mental or physical condition, is unable to authorize the system to have such access." *Id.* at § 15043(a)(2)(I) (emphasis added). Therefore, the issue before the Court is whether peer-review and death-review reports are encompassed within the phrase "all records of any individual."

Defendant argues that because the terms "peer-review" and "death-review" are not expressly included in the definition of "record" in the PADD Act, Congress did not intend to allow agencies such as Advocacy to access them. The Court finds this argument is against the weight of existing law. Although an issue of first impression in this Court and the Fifth Circuit, other courts, including the Second, Third, Eighth, and Tenth Circuits, along with several district courts, have determined that the P&A laws authorize designated agencies, such as Advocacy, access to peer-review reports

concerning the death of persons with disabilities.[5] Peer-review and death-review reports clearly fall within the broad definition of "record" under the PADD Act. "[T]he term record includes . . . a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents." 42 U.S.C. § 15043(c)(2).[6] The policy behind such disclosure is evident. "Without the disclosure of peer review records, dangerous health situations could be hidden, and patients could be harmed. . . . [C]onsidering the pros and cons of peer review disclosure and the text of the [PADD] Act, it seems reasonable to allow disclosure of records to P&A programs." Mary Daniel, Comment, *Should the Protection and Advocacy of Individuals with Mental Illness Preempt Peer Review? An Analysis of Center for Legal Advocacy v. Hammons*, 32 OKLA. CITY U.L. REV. 333, 349 (2007).

Defendant further asserts that the term "staff" is ambiguous, arguing that the personnel employed by DADS to work at its facilities are not staff as that term is used in the statute, noting that the typical clinical death-review committee includes physicians, investigating officers, directors, and others who would not be considered regular staffers. The Court, however, finds no merit in this

---

[5] *See e.g., Protection & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Servs.* 448 F.3d 119, 128 (2d Cir. 2006); *Missouri Protection & Advocacy Servs. v. Missouri Dep't of Mental Health*, 447 F.3d 1021, 1024 (8th Cir. 2006); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003); *Pennsylvania Protection & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 427-28 (3d Cir. 2000). The Court notes that the aforementioned cases specifically discuss the definition of "records" under the PAIMI Act. The parties do not dispute, however, that the definition in the PADD Act at issue in this case is substantially the same. Therefore, the cases cited apply equally to claims arising under the PADD Act as the PAIMI Act.

[6] Advocacy correctly notes that Defendant's additional argument concerning the proper interpretation of the words "all records of any individual" in the PADD Act (42 U.S.C. § 15043(a)(I)) has been expressly rejected by the Third Circuit in *Houstoun*. 228 F.3d at 427. Defendant asserts that the *Houstoun* decision is incorrect. This Court disagrees.

argument. The ordinary meaning associated with the term "staff" applies to all personnel associated with the preparation of such death-review reports. *See e.g. Houstoun*, 228 F.3d at 426.

Finally, Defendant argues that regulations construing the PADD Act plainly excludes peer-review documents from disclosure. *See* 45 C.F.R. 1386.22(c)(1) (1986) ("[N]othing in this section is intended to preempt State law protecting records produced by medical care evaluations or peer review committees."). The Third Circuit held in *Houstoun* that the interpretation of the P&A laws found in the regulations was unreasonable and should be rejected. *See* 228 F.3d at 427-28. In addition, the Administration on Developmental Disabilities[7] has proposed amendments to the PADD regulations that eliminate the prior regulatory language relied upon by Defendant that suggests that peer-review reports are exempt from disclosure. *See* 73 F.R. 19708, 19731-32 (April 10, 2008) (specifically addressing 45 C.F.R. § 1386.22(c)(1)). Therefore, this Court finds that Defendant's reliance on the federal regulations' unreasonable interpretation of the PADD Act should be rejected.[8]

The Court finds the reasoning of the circuit courts persuasive and agrees that Advocacy should have access to peer-review and death-review reports. Therefore, the Court concludes that the PADD Act allows Advocacy access to the reports of R.G. and A.P. it seeks from Defendant.

---

[7] The Administration on Developmental Disabilities is the federal agency responsible for implementation of the PADD regulations.

[8] Defendant also suggests that some of the reports requested by Advocacy specific to this suit should not be disclosed because they were created at the time an informal access agreement between the parties was still in place. Part I.B. of the parties' former Access Agreement states that it is "intended to carry out the provisions of the [PADD Act] and, therefore, if this agreement is or becomes inconsistent with the Act[] or regulations promulgated thereto, the terms of the Act[] or the regulation will control." Having concluded that the plain language in the PADD Act authorizes Advocacy access to peer-review and death-review reports, the Court finds that the terms of the Act control, and the Access Agreement does not apply to the reports requested by Advocacy.

## IV. Conclusion

In accordance with the foregoing, the Court **DECLARES** that the Department of Aging and Disability Services' policy of denying Plaintiff Advocacy, Incorporated access to peer-review and death-review reports on individual residents who die at facilities operated by the Department violates the PADD Act and will **RENDER JUDGMENT** in favor of Plaintiff Advocacy, Incorporated.

**SIGNED** this 26th day of March, 2009.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE